# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYSTALLEX INTERNATIONAL CORP., *Plaintiff*, v. BOLIVARIAN REPUBLIC OF VENEZUELA, *Defendant.* | Case No. 1:17-mc-151-LPS |

## SIEMENS ENERGY, INC.'S OBJECTION
## TO THE SPECIAL MASTER'S JOINT STATUS REPORT

**REED SMITH LLP**

Brian Rostocki (No. 4599)
John T. Miraglia (No. 6682)
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
brostocki@reedsmith.com
jmiraglia@reedsmith.com

Francisco Rivero (*Pro Hac Vice*)
Arturo Munoz Holguin (*Pro Hac Vice*)
1221 McKinney Street
Suite 2100
Houston, TX 77010
(713) 469-3800
frivero@reedsmith.com
amunoz@reedsmith.com

*Attorneys for Siemens Energy, Inc.*

**INTRODUCTION**

Pursuant to the Court's December 31, 2024, *Memorandum Order Regarding Sale Process and Litigation* (D.I. 1517), and following a meet-and-confer among the Sale Process Parties, the Special Master filed a Joint Status Report on January 14, 2025 (D.I. 1528) (the "JSR").[1] The JSR contains a panoply of "Proposed Bidder Protections" for any Stalking Horse approved by the Court (*id*. at Ex. A) including a "Termination Fee" of "3% of value of Attached Judgments expected to be satisfied . . . by sale proceeds at closing . . .up to a maximum of **$150 million**." (the "Termination Fee") (*id*. (emphasis added)).

Siemens Energy, Inc. ("SEI"), one of the Additional Judgment Creditors whose recovery from the sale proceeds could be imperiled by such a windfall to more senior creditors, respectfully requests that this Court deny, or at least defer, approval of the Termination Fee.

As discussed in Section I, *infra*, the statutory predicate for approval of a termination fee is inapplicable here, the fee is demonstrably unnecessary to incentivize any party to serve as a stalking horse bidder, and it could result in a windfall to more senior creditors at the expense of fulcrum creditors. And even if the Court is not prepared to reject the Termination Fee at this stage, SEI suggests in Section II, *infra*, that the Court should, at a minimum, defer approval of any termination fee until the conclusion of the auction sale, when it will enjoy a more fully developed evidentiary record. This approach would align more closely with existing Third Circuit practice than the pre-approval of the Termination Fee that the Special Master requests.

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the JSR and/or in such other documents referenced therein.

1

## ARGUMENT

### I. A Termination Fee is Not Warranted in this Case.

Given the similarities between this proceeding and a bankruptcy case (and perhaps also due to the overabundance of restructuring professionals advising the Special Master, the Additional Judgment Creditors, and other parties in interest), it is hardly surprising that the process adopted by the Court to conduct the sale of the PDVH shares mirrors the process that is employed when a debtor sells assets in bankruptcy pursuant to Section 363 of the Bankruptcy Code. But *this is not a bankruptcy proceeding*, and the statutory predicate for approval of a termination fee (or "break-up fee") in bankruptcy—Section 503(b) of the Bankruptcy Code, which allows a claim for the "actual, necessary costs and expenses of preserving the estate"—is not applicable here.

Moreover, the most compelling justification for a termination fee—to incentivize a party to act as stalking horse—is *demonstrably* unnecessary in this case because several Additional Judgement Creditors *have already stated publicly* their intent to place stalking horse bids.[2] The size of the outstanding claims and the possible range of value for the PDVH shares appears to be more than enough of an incentive to create significant interest among an array of potential bidders to become the stalking horse, an observation borne out by the fact that multiple parties have already assured the Court of their intention to bid.

Further, a termination fee is not in the best interest of all Additional Judgment Creditors. Considering the size of bids achieved in the first round of the Sale Process, not to mention the ongoing accrual of significant fees by the Special Master's advisors, fulcrum creditors already face the daunting prospect of being left out of the money. Subordinating these creditors by an additional

---

[2] *See, e.g.*, D.I. 1451 ("Red Tree plans to submit a new bid"); D.I. 1438 ("Crystallex . . . will ensure at least one offer is made that provides substantial value for the PDVH Shares."); D.I. 1373-5 ("Gold Reserve . . . is committed to making [a stalking horse bid] within a short period of time – within a few weeks – after it again obtains access to the Data Room, and it is our understanding that additional parties are also interested in submitting bids").

$150 million needlessly exacerbates this risk with no corresponding benefit. Far from *preserving* the value of PDVH shares, the Termination Fee would do the exact opposite: deprive more junior creditors of a recovery on their judgment. Furthermore, it could deliver an inequitable windfall to more senior Additional Judgment Creditor (since that more senior creditor would be paid in full even *without* a termination fee once its credit bid is topped).

Finally, even if this was a bankruptcy case and the Special Master could invoke Section 503(b) in support of the Termination Fee, the case for approval would be thin. Termination fees are approved only in narrow circumstances and have been generally disfavored in the Third Circuit.[3] Yet despite this high hurdle, there is no evidence in the record to suggest that approval of the Termination Fee will preserve the value of the PDVH shares or to support the contention that there is even a single party that would decline to act as stalking horse absent approval of the Termination Fee.

II. **The Court Should Defer Ruling on the Termination Fee Until After the Conclusion of the Sale Process**

Even assuming the Court is not prepared to deny approval of the Termination Fee outright at this stage, SEI respectfully submits that the Court should, at a minimum, defer consideration of the fee until the conclusion of the auction. This would align more closely with existing practice (for bankruptcy sales) in the Third Circuit.[4] It also just makes good sense. Once the auction is concluded and the sale proceeds have been determined, the Court will enjoy the benefit of a more

---

[3] *See, e.g.*, *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) (explaining that "a break-up fee is not 'necessary to preserve the value of the estate' when the bidder would have bid even without the break-up fee"); *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 537-38 (3d Cir. 1999) (affirming decision not to award a termination fee); *In re Energy Future Holdings Corp.*, 575 B.R. 616, 633-34 (D. Del. Bankr. 2017) ("The Third Circuit permits the payment of termination fees out of an estate only in certain narrow circumstances prescribed by Bankruptcy Code Section 503(b).")

[4] *See In re Reliant Energy Channelview LP*, 594 F.3d 200 (3d Cir. 2010) ("the allowability of break-up fees . . . depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate.")

3

complete evidentiary record and will be better situated to determine whether the award of a termination fee to a frustrated stalking horse is fair and equitable. Any such stalking horse bidder would be permitted to seek approval of a termination fee (before distribution of the sale proceeds) by submitting evidence to establish how it added value to the PDVH shares, why payment of a termination fee would not constitute a windfall, and why it is justified at the expense of more junior creditors. Deferring consideration of the termination fee will not cause harm to any party, and it may protect junior creditors from the consequences (some of which may not be foreseeable at this time) of premature approval of the fee.[5]

## CONCLUSION

For the reasons set forth above, SEI respectfully objects to the Special Master's Proposed Bidder Protection of a Termination Fee (D.I. 1528 at Ex. A).

Dated: January 17, 2025

**REED SMITH LLP**

*/s/ John T. Miraglia*
Brian Rostocki (No. 4599)
John T. Miraglia (No. 6682)
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
brostocki@reedsmith.com
jmiraglia@reedsmith.com

Francisco Rivero (*Pro Hac Vice*)
Arturo Munoz Holguin (*Pro Hac Vice*)
1221 McKinney Street, Suite 2100
Houston, TX 77010
(713) 469-3800
frivero@reedsmith.com
amunoz@reedsmith.com

---

[5] At minimum, payment of the Termination Fee should be limited to independent third parties who do not have any existing economic stake in the sale proceeds. If an Additional Judgment Creditor becomes the stalking horse, then fundamental fairness dictates that any Termination Fee paid to such creditor should reduce its claim on a dollar-for-dollar basis. Otherwise, such creditor would enjoy a windfall merely for credit bidding a claim that was going to be paid in full anyway.